UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

William Lake,

        Plaintiff,

vs.

Yellow Transportation, Inc.,

        Defendant.

Civil No: 07-3038 JMR/FLN

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO SUMMARY JUDGMENT**

## INTRODUCTION

Plaintiff William Lake, ("Lake") is an African American who was terminated by defendant Yellow Transportation, Inc. ("Yellow") on November 23, 2005, about a week before completing his thirty day probation to become a regular dock worker. Yellow attributed his termination to attendance and call unavailability infractions but treated Caucasians more leniently for similar conduct. Lake sued Yellow for violations of Title VII and 42 U.S.C. Section 1981 for race discrimination. For the reasons discussed, defendant's motion should be denied.

## FACTS

Lake is an African American, age 54, who began working for Yellow in August of 2004 as a casual dock worker at the Defendant's Burnsville, Minnesota, terminal. Lake at 38. The Burnsville facility was a 24-hour operation. Cover at 17. The Burnsville site has between 350 and 400 employees but the number has decreased since 2004. *Id.* The terminal currently has approximately 210 dock workers, down from 2004. *Id.* at 18-19. Week days are typically busier than weekends. *Id.* at 20.

As a casual dock worker, Lake was required to call in each day at 1:30 p.m. to inquire as to the availability of work. *Id.* at 39. Yellow would advise Lake of available work during such calls or the shift operations manager call him for work when available. Casuals were to be called a minimum of two hours' in advance before a scheduled shift. They were not guaranteed a regular work schedule and received all work assignments on call. *Id.* at 39. Lake was willing to work any shift. *Id.* at 42.

Lake had dock supervisors on each shift, including William Lux. Lake at 47. The dock supervisor, in turn, was supervised by the shift operations manager (SOM). *Id.* at 48; Kraus at 11-12. Yellow had four SOMs who, in turn, reported to General Manager Gary Kraus. Kraus at 11. Kraus was supervised by Yellow's Service Center Manager, Tom Cover. Kraus at 8, Cover at 15.

Kraus was General Manager from 1999 to 2007 and was responsible for oversight of the Burnsville facility including the dock operation, city operation, and yard operation. Kraus at 8. He was involved in hiring dock workers and gave the new hire orientation prior to their starting work. Kraus at 12-13. Lake attended the orientation session. Lake at 58. From that point on they were utilized as casual employees until such time as they became regular employees. *Id.* at 13.

Kraus was not aware of any one person at the terminal who was responsible for enforcing the company's anti-discrimination policy. Kraus at 14-15.

### A.   Casual-Probationary-Regular Employees

Casuals did not enjoy the same privileges as a "regular" employee. As a casual, Lake did not enjoy the rights and benefits of the union members under the collective bargaining agreement (CBA). Lake at 60-63. All new employees were hired as casuals. Kraus at 16. A casual did not gain seniority and had no commitment to permanent employment. *Id.* To become a probationary employee, a casual employee expresses a commitment to the company that they will be available for fork and continue to do a good job. Kraus at 17. Provided they meet the hiring criteria, they could move to regular employment. Kraus at 17.

According to Kraus, a casual employee demonstrates a desire to work for the company by availability. Kraus at 17. This is determined by a call-log on the casual employees. *Id.* The availability of casuals is based upon whether or not

they answer the phone. *Id.* at 18. Then, after answering the phone, the company looked to whether or not they were available. *Id.* Calls were generally made by the shift operations manager and sometimes by Kraus. *Id.* Casuals were permitted to work another job. Kraus at 21.

A probationary employee is a level of employment between casual and regular employee. Kraus at 22. It is someone who has been elevated from casual classification to a probationary classification. *Id.* at 22-23. A probationary employee works for a 30 day period on trial or evaluation to determine if he meets all the requirements of the company before becoming a regular employee. *Id.* at 23.

There were two ways a casual employee could move to a probationary classification. Kraus at 24. One, the supervisors and shift managers may evaluate a casual as someone who would be "a contributing member of the staff" at the facility. *Id.* The individual would be approached by the company and asked if they were interested in an opportunity to become a regular employee. *Id.*

The second way for a casual to become probationary was if the employee approached the company about regular employment. Kraus at 24. The company would look at the casual's performance reviews and availability to work and make a determination whether or not it fit the criteria to become probationary. *Id.*

To become a regular employee required that during the 30 day probation the employee had a spotless record and a demonstrated ability to perform the job within the parameters of the company and its expectations. Kraus at 25. They need to come to work when called. *Id.* It is a "30 day period under the microscope", according to Kraus. Kraus at 25.

Yellow had no written policy or criteria for how a dock worker could move from casual to probationary or how the probationary employee could become a regular employee. Kraus at 73-74.

Once probation was completed, the employee becomes a regular employee with a seniority date. Kraus at 26. He enjoys the benefits available under the collective bargaining agreement for health and welfare, pension contributions, higher wage, paid holidays, vacations and similar benefits. *Id.* at 26. According to Cover, upon completion of probation a dock worker becomes a ten percent regular employee. Cover at 38. The ten-percent employee has full benefits and grievance rights from the union, lower pay scale, and is not guaranteed any set work schedule. *Id.* Casuals do not have union rights until they become ten-percent employees. *Id.* at 39.

Probationary employees were given forty-hours a weeks and required to complete a thirty-day period to become a "regular" employee. Lake at 63-64. Regular employees were scheduled for work before casuals. Lake at 64.

### B.  Call Availability as Casual.

The names of dock workers to be called for work was kept on a casual Call List. Cover at 53-54, Dep. Ex. 1.[1] Probationary employees were designated by a "P" next to their name. *Id.* at 54. The order of calls for the dock was regulars, 10 percenters, overtime, laid off, probationary and casuals. Gombold at 11; Cover at 52-53. According to Kraus, there was a priority among the casuals who were called with the "best" candidates at the top of the list. Kraus at 19. The call list was configured so that the first calls were always made to those employees who did the best job, according to Kraus. *Id.*

As a casual, Lake could be called more than once if not available the first call. Lake at 67, Cover at 44. Yellow would keep calling if they had work available. Lake at 68. This was true despite Yellow's new employee statement of understanding that "missing a work opportunity will result in my being passed for the day." Lake at 67; Lake Dep. Ex. E, Cover at 43-44. In reality, according to Kraus, if the workload was busy, Yellow would call back casuals later for another shift. Kraus at 36-37.

Casuals were required to call in each day at 1:30 p.m. Lake at 68. They were informed in orientation that if work is available they will be scheduled on a shift. Kraus at 39; Lake Dep. Ex. G. Sometimes they were scheduled when they

---

[1] Exhibits are Deposition Exhibit Numbers and Letters unless otherwise indicated. *See* Fiebiger Aff.