UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
07-CV-03038(JMR/FLN)

William Lake                    )
                                )
          v.                    )          ORDER
                                )
Yellow Transportation, Inc.     )

This matter is before the Court on defendant's motion for summary judgment. Plaintiff was employed by Yellow Transportation, Inc. ("Yellow"), from August, 2004, until his termination on November 23, 2005. According to plaintiff, his dismissal resulted from racial discrimination. Defendant states plaintiff was improperly tardy, and denies any racial animus.

Defendant claims plaintiff has failed to establish a prima facie case of racial discrimination, and has failed to show its reasons for discharge were a pretext for racial discrimination. Plaintiff opposes summary judgment, asserting there are genuine issues of material fact which preclude a decision at this time.

Defendant's motion is granted.

I.  Background[1]

    A.  Plaintiff's Casual Employment

    Plaintiff, William Lake, an African American, began working at Yellow's Burnsville, Minnesota, facility in August, 2004, as a

---

[1]The Court views all facts in the light most favorable to plaintiff, the non-moving party. This motion is considered pursuant to Rule 56 of the Federal Rules of Civil Procedure. The "facts" set forth in this Opinion are drawn from the pleadings, and are not determinations on the merits.

casual dock worker.  Yellow transports freight using – for purposes of this case, and at the time in question – three categories of workers:  casual, probationary, and regular.

Casual workers are employed on an as-needed basis, and are subject to call two hours before an open shift.  Yellow requires casuals to accept at least five shifts every week.  As part-time employees, casuals are not subject to the collective bargaining agreement between Yellow and its organized employees.  The company does not guarantee permanent employment for casual workers.

Yellow's probationary employees are in that status for a period of 30 days, and are also not subject to the collective bargaining agreement.  A probationary worker who successfully passes the 30-day period becomes a regular Yellow employee, and becomes subject to the collective bargaining agreement.

When plaintiff began as a casual employee, he received and signed an acknowledgment stating that "[e]xcessive work missed will result in my name being removed from the casual list."  (Lake Dep. 66:9-14, Ex. E.)  Yellow stressed "attendance, availability, and performance" as the factors for promotion from casual status.

During plaintiff's employment as a casual, he "was routinely unavailable for work when called."  (Kraus Aff. ¶ 5.)  Even though he did not work 70% of the time when called (Kraus Aff. ¶ 11.), he received positive reviews and feedback when he did report for work. He promised Yellow his attendance and availability would improve if

he was promoted.

    B.  <u>Plaintiff's Probationary Employment</u>

In May, July, and September, 2005, plaintiff sought probationary status. (Kraus Aff. ¶¶ 8-10.) Each request was denied because of his unavailability and attendance. Also, if employees failed to satisfactorily complete probation, they were not allowed to return to casual status.

On October 31, 2005, Yellow agreed to allow plaintiff into the 30-day probationary regime beginning in November. He was cautioned, however, that he must exhibit "acceptable attendance and availability." (Kraus Aff. ¶ 12.) Plaintiff acknowledged he should have "a spotless record" during this 30-day period. (Pl.'s Mem. Opp. Summ. J. 5.) He denies Yellow warned him to avoid tardiness during probation. (Pl.'s Mem. Opp. Summ. J. 11.)

According to Yellow, plaintiff arrived late to work on November 4, 5, 11, and 18, and failed to punch his timecard on November 19 and 21. While plaintiff denies being tardy as often as claimed, he admits to being tardy on November 11 and 18.[2] According to Yellow, Lake's attendance led his supervisor, Gary Kraus, to advise him on November 21 that further late arrivals

---

[2]During oral argument, plaintiff acknowledged arriving late on three occasions during the probationary period. This contrasts with his Memorandum, which acknowledges only two late arrivals. (Pl.'s Mem. Opp. Summ. J. 37) (arguing that plaintiff's "two tardies of two minutes was [sic] reasonable"). Here, the Court relies on the number in the Memorandum.

would result in termination. (Kraus Aff. ¶ 14.) Lake explicitly denies that this meeting and warning took place. (Pl.'s Mem. Opp. Summ. J. 15.) Yellow states, and its records show, Lake reported late for work the very next day. Additionally, Yellow maintains Lake was unavailable for work on four separate occasions during the three-week probationary period. (Kraus Aff. ¶ 13.) Lake was terminated on November 23, 2005, for poor attendance and unavailability.

Plaintiff's memorandum does not suggest he was a victim of direct discrimination. During oral argument, defense counsel agreed plaintiff has no evidence of direct discrimination.

C. Procedural History

Lake filed suit against Yellow claiming race discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a)(1) and 42 U.S.C. § 1981. Specifically, Lake accuses Yellow of failing to hire him as a full-time employee, and terminating him because of his race.

II. Analysis

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The party opposing summary judgment may not rest upon the allegations set forth in its

4

pleadings, but must produce significant probative evidence. <u>See</u> <u>Anderson</u>, 477 U.S. at 248-49; <u>see also</u> <u>Hartnagel v. Norman</u>, 953 F.2d 394, 395-96 (8th Cir. 1992).

This Court analyzes plaintiff's Title VII and Section 1981 claims under the same framework. <u>Gordon v. Shafer Contracting Co.</u>, 469 F.3d 1191, 1196 (8th Cir. 2006). Because plaintiff has offered no direct evidence of discrimination, he must establish a prima facie case. <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973). If plaintiff can do so, defendant must advance legitimate, nondiscriminatory reasons for its decision. <u>Texas Dept. of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981). In order to survive summary judgment, plaintiff must show defendant's reason is a pretext for intentional discrimination. <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 511 (1993).

Plaintiff then must establish a prima facie case by showing: (1) he is a member of a protected class; (2) he met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination. <u>Wheeler v. Aventis Pharms.</u>, 360 F.3d 853, 857 (8th Cir. 2004). Plaintiff, as an African American, is a member of a protected class. And having been fired, he has faced an adverse employment action. This case turns on whether plaintiff has met Yellow's legitimate expectations, and whether the circumstances give rise to an inference of discrimination.

Applying these principles, the Court finds plaintiff has failed to establish a prima facie case.  Even assuming he can do so, he cannot show Yellow's reasons for his termination to be pretextual.  Yellow offers Lake's tardiness and unavailability as its legitimate, non-discriminatory reasons for dismissal.  The Eighth Circuit Court of Appeals recognizes tardiness as a legitimate reason for discharge.  See Clearwater v. Indep. Sch. Dist. No. 166, 231 F.3d 1122, 1127 (8th Cir. 2000).

While plaintiff denies being tardy five times during probation, he acknowledges he was tardy at least twice - November 11 and 18. (Pl.'s Mem. Opp. Summ. J. 35.)  He also acknowledges he failed to punch in on November 19 and 21, but claims this was excused by his supervisor.  (Id.)  These claims notwithstanding, Lake's timecards reflect five unexcused late arrivals, and two excused late arrivals in November, 2005.  (Lake Dep. 146:8-23, Ex. K; Cover Dep. 75:13 - 76:23; Ex. 4.)

In acknowledging his late arrivals, Lake surrenders his claim that Yellow's reasons are pretextual.  While he admits his tardiness, he argues the decision to end his employment was excessive.  That is as it may be.  The Eighth Circuit has emphasized that courts do not sit as super-human relations officers, nor are they empowered to second guess management's employment decisions.  See King v. Hardesty, 517 F.3d 1049, 1063 (8th Cir. 2008).

6

Plaintiff carries his argument a step further, claiming Yellow treated similarly situated Caucasian employees differently, giving rise to an inference of discrimination.  Id.  ("Instances of disparate treatment can support a claim of pretext.").  He claims Yellow's Caucasian probationary employees were not always available when called, but were not terminated.  He further claims several Caucasian regular employees were late to work, but kept their jobs. His argument fails; he cannot show his comparators were similarly situated.

In order to establish a valid comparison, "the plaintiff must show that he and those employees outside of his protected group were similarly situated in all relevant respects." Pope v. ESA Servs., 406 F.3d 1001, 1009 (8th Cir. 2005).  Here, plaintiff has failed to identify any employee with a similar tardiness record during their probationary period who Yellow hired-on as regular employees.  Other employees were late, but they were "regular" employees subject to the collective bargaining agreement. Plaintiff has no evidence showing any probationary employees - those beyond the protection of the collective bargaining agreement - were late, nor has he shown how frequently they were late, whether supervisors excused any tardiness, or whether Yellow knew about any other employees' tardiness.  See Clearwater, 231 F.3d at 1127.

Plaintiff offers a laundry list of grievances related by

7

others to suggest an inference of discrimination.  Whether taken separately or in the collective, these accusations do not give rise to an inference of discrimination.

He claims the reasons for his discharge changed over time. Lake properly notes that "[s]ubstantial changes over time in the employer's proffered reason for its employment decision support a finding of pretext." Korbrin v. Univ. of Minn., 34 F.3d 698, 703 (8th Cir. 1994).  His point is, however, unavailing, because Yellow has consistently maintained it fired Lake due to tardiness.  In response to the initial EEOC request, Yellow "supplied the EEOC with evidence regarding [Lake's] attendance and availability." (Def.'s Reply 10.)  From this fact, Lake argues Yellow claimed he was unavailable, rather than tardy.  This claim is specious. Yellow has consistently said Lake was late, and Lake does not deny it.  Yellow has not wavered from its reason for firing Lake; plaintiff therefore fails to raise an inference of discrimination.

Next, Lake argues Yellow's reliance on documents prepared after his discharge evinces pretext.  He is wrong -- his complaint relates to summaries Yellow had prepared.  But he is particularly wrong because his time cards reflect his tardiness.  While plaintiff denies the specific number of tardies, he does admit he was late.

Lake's denial of a late-November warning is similarly unavailing.  Supervisor Kraus maintains he warned Lake on November

21, 2005, that Yellow would fire him if he was late again.  Lake denies the conversation took place.  This does not help his case, because there is no requirement of a "final" warning, or any warning at all.  Lake admits two tardies.  Tardiness is not a post hoc invention where all involved parties agree Lake arrived late on at least two occasions.

This case is certainly not a class action, but Lake has offered statistical evidence he claims supports an inference of discrimination.  This, too, fails.  Plaintiff's statistical evidence establishes that all African American employees attaining regular status did so within a few weeks, while many Caucasian employees worked for more than a year before promotion.  (Def.'s Reply 7-8.)

Even if the statistics demonstrated otherwise, employment statistics do not usually bear on an employer's specific intentions.  "[S]uch statistical evidence will rarely suffice to rebut an employer's legitimate, nondiscriminatory reasons for a particular adverse employment action." Bogren v. Minnesota, 236 F.3d 399, 406 (8th Cir. 2000) (citation omitted).  Similarly, alleged "prior acts of discrimination" cannot rebut Yellow's reasons for discharging this particular employee.  Lake does not offer any evidence that would demonstrate pretext in this case.

Finally, although Yellow's hard drive crashed, destroying some past attendance reports, the missing reports do not relate to the

plaintiff.   Yellow provided Lake with comparable documents detailing employee attendance.   Lake is not entitled to an adverse inference of discrimination because Yellow "rebutted any presumption that the destroyed [material] would have bolstered [plaintiff's] case." <u>Favors v. Fisher</u>, 13 F.3d 1235, 1239 (8th Cir. 1994).

III.  <u>Conclusion</u>

Lake admits arriving late on at least two occasions, and he acknowledges that his probationary record should have been "spotless."   Tellingly, he cannot identify a similarly situated Caucasian employee treated more favorably by Yellow.   Upon review, the Court finds Lake has failed to raise a triable issue of material fact as to whether Yellow's reasons justifying Lake's termination were pretextual.

Accordingly, defendant's motion for summary judgment [Docket No. 18] is granted.

IT IS SO ORDERED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  January 6, 2009

<u>s/ James M. Rosenbaum</u>
JAMES M. ROSENBAUM
United States District Judge